# Webb, Appellant, v. Philadelphia & Reading Railway Company.

*Negligence—Railroads—Blowing whistle—Emission of steam—Fright of horse.*

The blowing of a whistle by a locomotive engineer is a lawful act; the emission of steam and smoke, where steam propels machinery, is a necessary incident of the use of steam, and therefore, not of itself unlawful. Both the blowing of the whistle and the escape of steam and smoke may be negligent, and therefore, unlawful according to circumstances. If the circumstances themselves do not warrant an inference of unlawful use, the mere fact that an accident was caused by either is not sufficient to convict of negligence.

In an action to recover damages for the death of plaintiff's husband, it appeared that at the time of the accident the deceased was driving on a country road near a deep cut of a railroad. A train had stopped at a station 400 yards away from the cut, and then started toward the cut. When the locomotive was in the cut, the vehicle on the highway was not visible to the engineer; and the railroad in front of him was visible only for a short distance, because of the curve; as he approached the cut he blew the whistle, and blew it loudly when entering, and in the cut smoke and steam in large quantity escaped; the deceased being on the highway above, his horse took fright, either because of the whistle or the smoke or because of both. *Held*, that a nonsuit was properly entered.

Argued Feb. 10, 1902. Appeal, No. 44, Jan. T., 1902, by plaintiff, from order of C. P. Delaware Co., Dec. T., 1898, No. 157, refusing to take off nonsuit in case of Isabella M. Webb v. Philadelphia & Reading Railway Company. Before MITCHELL, DEAN, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before JOHNSON, P. J.

The facts are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*O. B. Dickinson*, with him *Albert Dutton McDade*, for appellant.—The case was for the jury: Barnett v. Penna. R. R. Co.,

59 Pa. 259; P. & R. R. R. Co. v. Killips, 88 Pa. 405; P., W. & B. R. R. Co. v. Stinger, 78 Pa. 220; P., W. & B. R. R. Co. v. Brannen, 17 W. N. C. 227; Lott v. Frankford, etc., Pass. R. R. Co., 159 Pa. 472; Allegheny Valley R. R. Co. v. Findley, 4 W. N. C. 438.

Where a railway is alongside a highway the railroad company is bound to use its road with this fact in view, and if the steam whistle is blown unnecessarily and injury results the company is liable in damages: Patterson on Railway Accident Law, 148, 150.

*William B. Broomall,* for appellees, cited: Penna. R. R. Co. v. Barnett, 59 Pa. 259; Farley v. Harris, 186 Pa. 440; Philadelphia, Wilmington & Baltimore R. R. Co. v. Stinger, 78 Pa. 219; Philadelphia &. Reading R. R. Co. v. Killips, 88 Pa. 405; Lott v. Frankford, etc., Pass. R. R. Co., 159 Pa. 471; Drayton v. North Penna. R. R. Co., 10 W. N. C. 55; Fouhy v. Penna. R. R. Co., 17 W. N. C. 177.

OPINION BY MR. JUSTICE DEAN, May 19, 1902:

George Webb, the husband of plaintiff, was driving his team on a country road parallel with defendant's railroad; he was approaching Bingen station and about 400 yards from it. While Webb was opposite a deep cut on the highway above the railroad, the engineer of a locomotive, drawing a train, which had just left the station, and was about entering the cut, loudly blew the steam whistle; at the same time the locomotive emitted a considerable volume of smoke and steam. Webb's horse took fright, ran away and he was killed. His widow brings this suit against the company, alleging her husband's death was caused by negligence of defendant, in that the engineer, 1. Blew the whistle at an improper place. 2. That there was no necessity for blowing it at all. 3. That it was blown so loudly, and smoke and steam emitted in such large volume as to make both acts so unusual and extraordinary, as to necessarily frighten the ordinary horse.

From the evidence, it was not apparent to the court below, that any negligence was shown on the part of defendant, consequently, a compulsory nonsuit was directed, which afterwards the court refused to take off and we have this appeal by plaintiff.

The facts in the case do not raise a presumption of negligence against the defendant. The blowing of a whistle by a locomotive engineer is a lawful act; the emission of steam and smoke, where steam propels machinery, is a necessary incident of the use of steam and therefore, not of itself unlawful. Both the blowing of the whistle and the escape of steam and smoke may be negligent, and therefore, unlawful according to circumstances. If the circumstances themselves, do not warrant an inference of unlawful use, the mere fact, that an accident was caused by either, is not sufficient to convict of negligence.

He who alleges negligence must go further, and prove it; he must show, that an act in itself lawful, the commission of it either at the time, at the place or in the manner, became unlawful. This is the substance of two carefully considered decisions by this court: Phila. W. & B. R. R. Co. v. Stinger, 78 Pa. 219; Farley v. Harris, 186 Pa. 440; both cases involved the question of negligence in blowing of steam whistles; and in both cases we carefully avoided any modification of the rule on the same subject laid down in Penna. R. R. Co. v. Barnett, 59 Pa. 259, followed by a long line of cases down to Simmons v. Penna. R. R. Co., 199 Pa. 232. In each of these many cases, either the undisputed facts afforded some ground for an inference of negligence, or there was express affirmative evidence of negligence; as a consequence, the cases went to a jury.

In the case before us, a nonsuit was directed; therefore, we must take every fact as proven of which there was any evidence; yet on these facts the jury would not have been permitted to find a verdict against defendant. The train had stopped at Bingen station; 400 yards ahead of it was a deep cut on a curve; the highway ran on top of the embankment parallel with the railroad; when the locomotive was in the cut, the vehicle on the highway was not visible to the engineer; and the railroad in front of him was visible, only for a short distance, because of the curve; as he approached the cut, he blew the whistle and blew it loudly; when entering and when in the cut, smoke and steam in large quantity escaped; the deceased being on the highway above, his horse took fright, either because of the whistle or the smoke or perhaps because

of both.   Just what warning the engineer should give under such circumstances, would be dictated by his carefulness and regard for the lives of others; there might be travelers on the highway approaching, or even on the road above him; they ought to have warning that they might be able to restrain their animals; either by stopping, going to their heads and holding them until the train passed, or by preparing for their sudden fright and unexpected movements under fright; those, at some distance, might prefer to wait until the train had passed before going on an embankment at the top of a deep cut.   We leave out of view the question of signal posts altogether; the deep cut and curve were there as signals to the engineer, which could not in the exercise of care be disregarded by him.   Then, what was in front of him, but out of sight on the track?   Perhaps third persons having no business there, yet not to be recklessly run over; or track employees who had a right to be there and were entitled to warning of an approaching train. All the circumstances point to no conclusion of negligence in giving warning at that time and at that place.   As to the allegation that the whistle was blown unusually loud, that of itself does not show negligence; how far must the sound carry, to warn those whom it was intended to reach, either on the highway or track?   That would depend on the state of the atmosphere at that time and the knowledge of the engineer derived from observation.   No mere opinion or conjecture of those having no knowledge on the subject should be permitted to convict him of recklessness.   As to emitting unusual quantities of smoke and steam, the extent of that, immediately after starting from the station would depend on the weight of his train and the degree of curvature of the road he must draw it over; necessarily, it was greater with a heavy train at a curve, than with a lighter train on a straight track.   Giving plaintiff's testimony all the weight and significance it is entitled to, it fails to show that defendant committed a lawful act in an unlawful manner, therefore the judgment is affirmed.